**Felix JUSTIZ–CEPERO, Petitioner,**

v.

**Richard THORNBURGH,
et al., Respondents.**

**No. 91–3202–RDR.**

United States District Court,
D. Kansas.

March 31, 1995.

Felix Justiz Cepero, Three Rivers, TX, pro se.

Melanie D. Caro, Office of U.S. Atty., Topeka, KS, Connie R. DeArmond, Office of U.S. Atty., Wichita, KS, Ellen Sue Shapiro, Office of Immigration Litigation, Civil Div., Washington, DC, for respondents.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241. Petitioner, a detainee held in the custody of the Immigration and Naturalization Service ("INS") challenges his continued detention. The respondents have filed an Answer and Return (Doc. 8), and petitioner has filed a traverse (Doc. 9). Having examined the record, the court makes the following findings and order.

*Factual Background*

Petitioner is a native of Cuba who arrived in this country in 1980 after a troubled history in his native country. After serving in the Cuban army from 1969 to 1972, he was released from active duty and enrolled in the University of Havana. While a student, he participated in an underground student group opposing the Communist principles of the Cuban government. In November 1975 he refused an order to fight with Cuban forces in Angola and, as a result, was expelled from the University.

In February 1976, petitioner was arrested on charges of disloyalty and conspiracy against the revolution. He was interrogated, beaten, and eventually was transferred to a high security work camp. He later was transferred to a prison before being released in 1979. Due to conditions in Cuba, petitioner was unable to leave the country, and he was sent to a labor farm. In April 1980, petitioner, along with a number of others,

sought refuge in the Peruvian Embassy in Havana.[1]

During this period, Castro essentially opened Cuban ports for emigration not only to members of the general public but to those housed in prisons and mental institutions, ultimately resulting in a flow of some 125,000 Cubans to American shores. Petitioner arrived in Florida among this swell of immigrants, and was released on immigration parole shortly thereafter. He filed his initial application for asylum on May 3, 1980.

In 1982, plaintiff became involved in a bank robbery in Gaithersburg, Maryland. He entered a guilty plea in the United States District Court for the District of Maryland to a charge of aiding and abetting an armed robbery and was sentenced to twelve years. Petitioner's immigration parole was revoked on January 30, 1985, and an immigration detainer was lodged against him on May 13, 1985.

After serving seven years and four months, petitioner was released to INS custody on December 8, 1989.

Petitioner received several disciplinary reports during the early years of his confinement, including refusing to work, setting a fire, and threats to staff members. In March 1983, petitioner was transferred to the Federal Medical Center for Prisoners, Springfield, Missouri, for evaluation. After treatment for depression and paranoia, petitioner was transferred to the United States Penitentiary, Lewisburg, Pennsylvania.

At the Lewisburg facility, petitioner became involved in educational courses and received a high school equivalency degree. However, between 1984 and 1986, he received five additional disciplinary reports, including a charge stemming from a stabbing

during a confrontation between Cuban and Colombian inmates. As a result, petitioner was designated for a disciplinary transfer and was transferred to the United States Penitentiary, Marion, Illinois, in April 1986. He incurred two disciplinary charges there in 1986.

Petitioner was housed at the United States Penitentiary, Leavenworth, Kansas ("USPL") from April 1989, until early 1995, when he was transferred to a lower security facility. Throughout his placement at USPL, he remained free of disciplinary charges and participated in educational and vocational programs.

Pursuant to federal regulations, petitioner has been reviewed periodically for immigration parole, and in March 1990, parole was denied due to petitioner's criminal history and prison record.

In early 1991, petitioner was served with notice of intent to repatriate, and a hearing was conducted on May 9, 1991, before an immigration judge. At the close of these proceedings, petitioner was granted asylum. However, the INS appealed from this finding, and the grant of asylum was subsequently reversed by the Board of Immigration Appeals. Petitioner is now subject to repatriation, although that action has been stayed by the court pending the resolution of the civil actions petitioner has commenced in this district.[2]

*Discussion*

Petitioner's first claim for relief appears to challenge the authority of the Attorney General to detain him pending the administrative appeal from the decision of the immigration judge.

1. "In early April 1980, some 10,800 Cuban citizens claiming status as political refugees sought sanctuary in the Peruvian Embassy in Havana. On April 14, 1980, President Carter declared that, pursuant to the Refugee Act of 1980, up to 3,500 of these refugees would be admitted into the United States. He allocated up to $4.25 million for their resettlement. 45 Fed.Reg. 28079 (April 28, 1980). An airlift was started but within three days Castro stopped the flights, announcing that anyone who wanted to leave could do so through the harbor at Mariel. Al-

most immediately, small boats, funded by members of the Cuban–American community, began leaving Key West." *United States v. Frade,* 709 F.2d 1387, 1389 (11th Cir.1983).

2. In addition to this action, petitioner filed two other actions during his confinement at the United States Penitentiary, Leavenworth; *Justiz–Cepero v. INS,* Case No. 91–3381, and *Justiz–Cepero v. Board of Immigration Appeals,* Case No. 92–3046.

To the extent petitioner seeks to state a claim of constitutional dimension, his argument lacks support. It is established that the "initial admission of aliens to this country is a privilege" and an alien has no rights concerning his application for entry; rather, the power to admit or exclude an alien is a sovereign act. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950). Petitioner therefore is due only that process provided by Congress. *Knauff,* 338 U.S. at 544, 70 S.Ct. at 313.

The statutory scheme likewise affords petitioner no relief, as it appears both to contemplate the detention of an excludable alien pending the resolution of admissibility and to vest broad discretion in the Attorney General to evaluate release on parole. *See generally* 8 U.S.C. § 1226(b) (appeal from decision to admit an alien stays any final action) and 8 U.S.C. § 1182(d)(5)(A) (Attorney General has discretion to parole temporarily into United States for emergent reasons or for reasons strictly in the public interest but when such purposes have been served, alien shall be returned to custody forthwith).

Thus, petitioner's detention is appropriate during the pendency of the agency's appeal in his case, and his continued detention does not offend a constitutional interest.

Likewise, petitioner's claim his detention is cruel and unusual is without merit. The continued detention of petitioner under immigration authority is supported by a rational, nonpunitive basis and does not implicate the Eighth Amendment. Rather, this detention inheres in the authority of the sovereign to control immigration and to exclude those deemed undesirable for admission. *See Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1448–50 (9th Cir.1995).

Finally, having considered petitioner's claim he was subjected to due process violations in the repatriation efforts against him, the court finds no error in the limited action taken to notify petitioner of an intent to repatriate.

Having considered petitioner's arguments, the court concludes his continued detention pending the resolution of his application for admission is not arbitrary and does not otherwise offend the Constitution.

IT IS THEREFORE ORDERED the petition for habeas corpus is denied.